UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JOSEPH M. JOHNSON,

        Petitioner,                  Case No. 1:24-cv-372

v.                                                  Honorable Ray Kent

GARY MINIARD,

        Respondent.
_____/

## **OPINION**

        This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Petitioner consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 6.) Section 636(c) provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c).

        This case is presently before the Court for preliminary review pursuant to 28 U.S.C. § 2253 and Rule 4 of the Rules Governing § 2254 Cases. The Court is required to conduct this initial review prior to the service of the petition. Rule 4, Rules Governing § 2254 Cases.

        Service of the petition on the respondent is of particular significance in defining a putative respondent's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any

procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351.

Rule 4, by requiring courts to review and even resolve the petition before service, creates a circumstance where there may only be one party to the proceeding—the petitioner. Because Respondent has not yet been served, the undersigned concludes that Respondent is not presently a party whose consent is required to permit the undersigned to conduct a preliminary review of the petition. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1] Petitioner's consent is sufficient to permit the undersigned to conduct the Rule 4 review.

The Court conducts a preliminary review of the petition under Rule 4 to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134,

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

141 (6th Cir. 1970) (discussing that a district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436–37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim. The Court will also deny Petitioner's motion to appoint counsel (ECF No. 4).

## Discussion

### I. Factual Allegations

Petitioner Joseph M. Johnson is incarcerated with the Michigan Department of Corrections (MDOC) at the Central Michigan Correctional Facility (STF) in St. Louis, Gratiot County, Michigan. On April 19, 2018, in Calhoun County Circuit Court Case No. 2018-00715-FH, Petitioner pleaded guilty to one count of embezzlement by an agent or trustee of $1,000.00 or more but less than $20,000.00, in violation of Mich. Comp. Laws § 750.1744A. (Pet., ECF No. 1, PageID.1; Br. Supp. § 2254 Pet., ECF No. 2, PageID.12.) On June 18, 2018, the Court sentenced Petitioner as a fourth-offense habitual offender, Mich. Comp. Laws § 769.12, to 18 months' probation. *See* Register of Actions, *People v. Johnson*, No. 2018-00715-FH (Calhoun Cnty. Cir. Ct.), https://micourt.courts.michigan.gov/case-search/court/C37 (under "Case Number," type "2018" for "Year," type "00715" for "Number," and type "FH" for "Type"; select "Search"; then select the link for 2018-00715-FH) (last visited Apr. 17, 2024).

On December 19, 2022, Petitioner appeared before the trial court for a probation violation hearing, at which time he pleaded guilty to the alleged probation violations. *See id.* On January 9, 2023, the trial court sentenced Petitioner to a term of 46 months to 10 years' incarceration for the probation violations. *See id.* The Michigan Court of Appeals denied Petitioner's application for leave to appeal on August 25, 2023. *See* Register of Actions, *People v. Johnson*, No. 366800

(Mich. Ct. App.), https://www.courts.michigan.gov/c/courts/coa/case/366800 (last visited Apr. 17, 2024). The Michigan Supreme Court denied Petitioner's application for leave to appeal on January 30, 2024. *See People v. Johnson*, 1 N.W.3d 277 (Mich. 2024).

On April 10, 2024, Petitioner initiated federal habeas proceedings by filing his § 2254 petition and a brief in support thereof. (ECF Nos. 1, 2.) In his petition, Petitioner raises the following ground for relief:

> I. [Petitioner] is entitled to resentencing where his sentence is unreasonably harsh and disproportionate.

(Pet., ECF No. 1, PageID.3.) Petitioner has also filed a motion to appoint counsel. (ECF No. 4.)

## II. Motion to Appoint Counsel

Petitioner requests that the Court appoint counsel to represent him in his federal habeas proceedings, asserting that he does not have adequate time to access the law library and that his incarceration "severely hampers his ability to litigate this case." (*Id.*, PageID.44.) Indigent habeas petitioners have no constitutional right to a court-appointed attorney. *Johnson v. Avery*, 393 U.S. 483, 488 (1969); *Barker v. Ohio*, 330 F.2d 594, 594–95 (6th Cir. 1964); *see also Lovado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court is required by rule to appoint an attorney only if an evidentiary hearing is necessary or if the interest of justice so requires. Rule 8(c), Rules Governing Section 2254 Cases.

The Court has considered the complexity of the issues and the procedural posture of the case. At this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Petitioner's position. Petitioner's motion for a court-appointed attorney will therefore be denied.

4

### III. AEDPA Standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)); *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record

6

that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## IV. Discussion

As his sole ground for relief, Petitioner contends that he is "entitled to resentencing where his sentence is unreasonably harsh and disproportionate." (Pet., ECF No. 1, PageID.3.) He indicates that he raised this ground for relief in his applications for leave to appeal to both the court of appeals and the supreme court.

Petitioner asserts that he has "long suffered with drug abuse disorder, and this has fueled his long criminal history." (Br. Supp. § 2254 Pet., ECF No. 2, PageID.12.) When Petitioner was arrested on the probation violation, "he had been living in Nevada for approximately 4 years and was working a steady job and doing very well." (*Id.*) He "was staying drug free and had received no new criminal charges." (*Id.*) Petitioner states that he left Michigan because "[s]omeone had threatened his life and he was extremely afraid that if he did not leave the state he would be killed." (*Id.*) He acknowledges that he should have sought to transfer his probation to Nevada. (*Id.*)

7

Petitioner contends that "his sentence is harsh and unreasonable as he was not given ample time to address his substance abuse disorder." (*Id.*, PageID.13.) He argues further that his sentence is unreasonable and disproportionate, and that it violates equal protection principles, because Petitioner "did not have the ability to pay off restitution and court costs and fees." (*Id.*, PageID.18.) Petitioner cites to a portion of the transcript from the hearing during which he pleaded guilty to the probation violations. (*Id.*, PageID.26.) According to Petitioner, at that hearing, the trial judge told Petitioner that if Petitioner were able to fully pay his restitution and extradition fees before sentencing, that might have an impact on the judge's decision. (*Id.*) Petitioner believes that he was sentenced "at the top of the guidelines due to his failure to pay his court[-]ordered restitution." (*Id.*)

The term disproportionate is derived from state court authority regarding sentencing. *See People v. Steanhouse*, 902 N.W.2d 327 (Mich. 2017); *People v. Milbourn*, 461 N.W.2d 1 (Mich. 1990). However, "a federal court may issue the writ to a state prisoner 'only on the ground that he [or she] is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). Thus, any claim by Petitioner that the trial court violated state sentencing guidelines or state sentencing principles regarding disproportionality is purely a state law claim that is not cognizable on habeas review.

In *Milbourn*, the Michigan Supreme Court held that a sentencing court must exercise its discretion within the bounds of Michigan's legislatively prescribed sentence range and pursuant to the intent of Michigan's legislative scheme of dispensing punishment according to the nature of the offense and the background of the offender. *Milbourn*, 461 N.W.2d at 9–11; *People v. Babcock*, 666 N.W.2d 231, 236 (Mich. 2003). Nearly three decades later, in *Steanhouse*, the Michigan Supreme Court held that a sentencing court's departure from the sentencing guidelines is

unreasonable if the court abused its discretion. *Steanhouse*, 902 N.W.2d at 335. The proper test for determining whether the sentencing court abused its discretion, it held, is found in *Milbourn*'s proportionality analysis. *Id*. at 335–37. In other words, a sentence departing from the guidelines is unreasonable if it is disproportionate.

It is clear that *Milbourn* and, thus, *Steanhouse*, were decided under state, not federal, principles. *See Lunsford v. Hofbauer*, No. 94-2128, 1995 WL 236677, at *2 (6th Cir. Apr. 21, 1995) ("[Petitioner] argues that the trial court improperly exceeded the state sentencing guidelines and violated the principles of proportionality set forth in [*Milbourn*,] essentially asking the court to rule on a matter of state law which rarely serves as a basis for habeas corpus relief."); *Clarmont v. Chapman*, No. 20-1205, 2020 WL 5126476, at *1 (6th Cir. Jul. 13, 2020) ("[A]ny state law challenge to the reasonableness of [petitioner's] sentence or argument that his sentence is disproportionate under state law is also not cognizable on habeas review."); *Atkins v. Overton*, 843 F. Supp. 258, 260 (E.D. Mich. 1994) ("Petitioner's claim that his sentence violates the proportionality principle of *People v. Milbourn* does not state a claim cognizable in federal habeas corpus."). Because this Court has no power to intervene based on a perceived error of state law, *see Wilson*, 562 U.S. at 5, any claims raised by Petitioner based upon *Milbourn* and *Steanhouse* are not cognizable in a habeas corpus action.

To the extent Petitioner asserts his disproportionality claim as a violation of the Eighth Amendment's proscription against cruel and unusual punishment, the United States Constitution does not require strict proportionality between a crime and its punishment. *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment." *Marks*, 209 F.3d at 583; *see also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003)

(discussing that gross disproportionality principle applies only in the extraordinary case); *Ewing v. California*, 538 U.S. 11, 36 (2003) (holding that principle applies only in "the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality" (quoting *Rummel v. Estelle*, 445 U.S. 263, 285 (1980))). A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)). Ordinarily, "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995). Petitioner was not sentenced to death or life in prison without the possibility of parole, and his sentence falls within the maximum penalty under state law. Thus, any Eighth Amendment disproportionality argument raised by Petitioner lacks merit.

Petitioner also contends that the trial court violated the equal protection guarantees set forth in the federal and state constitutions by revoking Petitioner's probation even when Petitioner "did not have the ability to pay off restitution and court costs and fees." (Br. Supp. § 2254 Pet., ECF No. 2, PageID.18.) In support of his argument, Petitioner cites Mich. Comp. Laws § 769.1a(14) and Michigan Court Rule 6.425(E), both of which provide that an individual's probation should not be revoked for failure to comply with an order to pay restitution or other monies unless the trial court finds that the individual is able to comply and has not made a good faith effort to do so. (*Id.*, PageID.26.) Again, however, because this Court has no power to intervene based on a perceived error of state law, *see Wilson*, 562 U.S. at 5, any claims raised by Petitioner based upon these statutes are not cognizable in a habeas corpus action.

In 1970, the United States Supreme Court held that "when the aggregate imprisonment exceeds the maximum period fixed by the statute and results directly from an involuntary nonpayment of a fine or court costs [the court is] confronted with an impermissible discrimination that rests on ability to pay." *Williams v. Illinois*, 399 U.S. 235 (1970). A year later, the Court extended *Williams* to hold that

> the same constitutional defect condemned in Williams also inheres in jailing an indigent for failing to make immediate payment of any fine, whether or not the fine is accompanied by a jail term and whether or not the jail term of the indigent extends beyond the maximum term that may be imposed on a person willing and able to pay a fine. In each case, the Constitution prohibits the State from imposing a fine as a sentence and then automatically converting it into a jail term solely because the defendant is indigent and cannot forthwith pay the fine in full.

*Tate v. Short*, 401 U.S. 395, 398 (1971) (quoting *Morris v. Schoonfield*, 399 U.S. 508, 509 (1970) (White, J., concurring)).

About a decade later, the Court considered "whether a sentencing court can revoke a defendant's probation for failure to pay the imposed fine and restitution, absent evidence and findings that the defendant was somehow responsible for the failure or that alternative forms of punishment were inadequate." *Bearden v. Georgia*, 461 U.S. 660, 665 (1983). The Court noted that "[t]o determine whether . . . differential treatment violates the Equal Protection Clause, one must determine whether, and under what circumstances, a defendant's indigent status may be considered in the decision whether to revoke probation." *Id.* at 665–66. The Court set forth that, based upon *Williams* and *Tate*, "if the State determines a fine or restitution [is] the appropriate and adequate penalty for the crime, it may not thereafter imprison a person solely because he lacked the resources to pay it." *Id.* at 667–68. The Court held that

> in revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay. If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority. If the

11

> probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternate measures of punishment other than imprisonment. Only if alternate measures are not adequate to meet the State's interests in punishment and deterrence may the court imprison a probationer who has made sufficient bona fide efforts to pay. To do otherwise would deprive the probationer of his conditional freedom simply because, through no fault of his own, he cannot pay the fine. Such a deprivation would be contrary to the fundamental fairness required by the Fourteenth Amendment.

*Id.* at 672–73.

Here, Petitioner believes that the trial court sentenced him disproportionately "due to his lack of funds" and failed to treat him equally "because of his financial status." (Br. Supp. § 2254 Pet., ECF No. 2, PageID.25.) Petitioner asserts that he "made a good faith effort to pay his restitution, even while incarcerated." (*Id.*, PageID.27.) He told the trial court that "he has maintained employment and is willing to pay restitution." (*Id.*) Petitioner's own admissions, however, fail to suggest that the trial court revoked his probation and sentenced him to a term of incarceration solely because Petitioner had failed to pay his restitution in full. Instead, Petitioner acknowledges that he absconded from probation by leaving the State of Michigan. (*Id.*, PageID.24.) Indeed, as Petitioner relates, he had absconded from probation for approximately 4 years prior to his arrest for the probation violation. (*Id.*, PageID.12.) Under these circumstances, Petitioner simply fails to demonstrate that the trial court violated equal protection principles by revoking his probation and sentencing him to a term of incarceration solely based upon Petitioner's failure to pay. Petitioner, therefore, has failed to demonstrate that the state courts' rejection of his claim for relief was contrary to, or an unreasonable application of, clearly established federal law, and he therefore is not entitled to federal habeas relief.

V.     **Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined Petitioner's claim under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claim was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

13

## **Conclusion**

The Court will enter a judgment dismissing the petition and an order denying Petitioner's motion to appoint counsel (ECF No. 4) as well as a certificate of appealability.


Dated:   April 26, 2024             /s/ Ray Kent
                                    Ray Kent
                                    United States Magistrate Judge